**David P. Rossmiller, WSBA No. 36491**
Email: david.rossmiller@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
701 NE 136th Avenue, Suite 200,
Vancouver, WA 98684
Telephone:      (360) 612-0515
Facsimile:      (360) 612-0516

*Attorney for Plaintiff COUNTRY Mutual Insurance Company*

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, a foreign company<br><br>                     Plaintiff,<br><br>          vs.<br><br>Atlasrhino, Inc. dba Zenaptic Chiropractic, a Washington corporation, and Troy Dreiling, an individual and the president of Atlasrhino, Inc.<br><br>                     Defendants. | NO.<br><br>COMPLAINT<br><br>(Declaratory Relief Under 28 U.S.C. § 2201) |

For its Complaint against defendants Atlasrhino, Inc. and Troy Dreiling, Plaintiff COUNTRY Mutual Insurance Company alleges as follows:

**PARTIES**

1.      COUNTRY Mutual Insurance Company ("COUNTRY") is an Illinois mutual insurance company with its principal place of business in Illinois. At all relevant times, COUNTRY was registered to write certain lines of insurance in Washington.

2.      Upon information and belief, Atlasrhino, Inc. ("Atlasrhino") is a Washington-registered corporation with its principal office street address at 3021 NE 72nd Dr. Suite 15,

1  Vancouver, Washington 98661-7300.

2      3.    Upon information and belief, Troy Dreiling ("Dreiling") is the registered agent and

3  president of Atlasrhino and is a resident of Ridgefield, Washington.

4  <center>**JURISDICTION AND VENUE**</center>

5      4.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the federal

6  diversity jurisdiction statute.

7      5.    The amount in controversy exceeds the sum or value of $75,000, exclusive of

8  interest and costs. Upon information and belief, the defense costs being provided by COUNTRY

9  will exceed $75,000, the insurance policies at issue have liability limits of more than $75,000 and

10  COUNTRY may be asked to pay indemnity in the Underlying Lawsuit (defined below) of more

11  than $75,000.

12      6.    Venue is proper in this court under 28 U.S.C. § 1391(b) because the defendants are

13  domiciled in this District, because the alleged events giving rise to the claims against Atlasrhino

14  and Dreiling occurred in this District, and because the insurance that is the subject of this action

15  was issued in this District.

16  <center>**THE RELEVANT INSURANCE POLICIES**</center>

17      7.    COUNTRY issued Businessowners Policy number AM9171465 (the

18  "Businessowners Policy") to named insured Atlasrhino, Inc. dba Zenaptic Chiropractic for the

19  relevant policy periods effective annually from January 10, 2018 to January 10, 2025. The

20  Businessowners Policy has an Each Occurrence Limit of $1 million and a General Aggregate Limit

21  of $2 million.

22      8.    COUNTRY also issued Personal Umbrella Liability Policy number ABU4927846

23  (the "Umbrella Policy") to named insureds Troy M & Kimberly L Dreiling for the relevant policy

24  periods effective annually from January 13, 2019 to January 13, 2025, with an Any One

25  Occurrence limit of $1 million; and issued Home Policy number A46K4927841 (the "Home

Policy"), with relevant annual effective dates from January 14, 2019 to January 14, 2025 and  a

Page 2 – COMPLAINT FOR DECLARATORY RELIEF

liability limit of $500,000, to named insureds "Dreiling Troy M & Kimberly L." Each of the Umbrella Policies list the A46K4927841 Home Policy as underlying insurance.

9. Together, the Businessowners Policy, the Home Policy and the Personal Umbrella Policy are referred to as the "Policies". Copies of the Policies are attached to this Complaint as Exhibits 1, 2 and 3. (Together, "the Policies"). The Policies are incorporated as if stated in full in this Complaint.

**COMMON ALLEGATIONS**

10. On or about May 16, 2024, a lawsuit was filed against Atlasrhino, Dreiling and two other defendants in the Superior Court of the State of Washington for the County of Clark, Case number 24-2-01547-06 (the "Underlying Lawsuit"), and is titled *Miranda Devault, an individual, Jazmin Anderson, an individual, Lacie Bacon, an individual, Suzanne Kelton, an individual, Plaintiffs, v. Atlasrhino, Inc., a Washington Corporation, Troy Dreiling, an individual, Fred Schofield, an Arizona resident, and Mo Chih Chu Chiropractic Training, Inc., an Arizona Company. (the "Ridgeway Lawsuit")*. The Underlying Lawsuit's Complaint is attached to this Complaint as Exhibit 4 and is incorporated in full.

11. The plaintiffs in the Complaint, Miranda DeVault, Jazmin Anderson, Lacie Bacon and Suzanne Kelton, allegedly each were employed by Atlasrhino. It is alleged that co-defendant Troy Dreiling is the "owner manager, and operator of [Atlasrhino], having control over the terms and conditions of employment for employees of the named entity in Vancouver, Washington. Dreiling is and was charged with carrying out employment policies and personnel management decisions affecting the terms and conditions of Plaintiffs' employment. Dreiling's acts were for his own benefit and the benefit of his marital community."

12. Co-defendant Mo Chih Chu Chiropractic Training, Inc., dba Schofield Chiropractic Training ("SCT"), is alleged to be "a chiropractic consulting, training, or coaching business run by Defendant Fred Schofield" who is alleged to be "an Arizona-based chiropractor

who acted as a consultant and 'mentor' for Defendant Troy Dreiling through his business SCT." Schofield allegedly travelled regularly to the Atlasrhino facility in Vancouver and, while there, had meetings with Atlasrhino employees, including the four plaintiff Employees.

13.     The Complaint alleges that all of the members of the management and doctor team at Atlasrhino are males and that all of the women at the clinic are employed in support roles. It is alleged that all but one of the male employees of Atlasrhino "had substantive biography pages" on the Atlasrhino website, while only one of the female employees had a biography page on the website. It also is alleged that one of the current female employees does not have a photo or profile on the website.

14.     The Employees allegedly worked at the clinic between 2019 and 2024 as Decompression Technician and Chiropractic Assistants for Atlasrhino: allegedly, Miranda DeVault was employed between November 21, 2022 and January 12, 2024; Jazmin Anderson was employed from March 2023 to February 12, 2024; Lacie Bacon was employed from August 2022 to February 12, 2024; and Suzanne Kelton was employed from September 2019 to February 2023. Allegedly, "During each of their employment for Defendants, Plaintiffs experienced ongoing severe and pervasive sexual harassment and sex/gender discrimination in the workplace perpetrated by the owner and operator of [Atlasrhino], Troy Dreiling and his 'mentor' and consultant, Dr. Fred Schofield and his consulting business, Schofield Chiropractic Training, and Steven Duvall, LMT [sic]." Allegedly, Schofield visits approximately two times a year to speak with employees at Atlasrhino and Dreiling has employees watch videos made by Schofield at other times during the year.

15.     The Complaint alleges that "In the workplace in the [Atlasrhino] office in Vancouver, Dreiling and Schofield regularly made inappropriate and sexual comments about women, in the presence of Plaintiffs, or directed at Plaintiffs. Defendants would frequently comment on patients, employees, their bodies, their eating habits, their fitness, and their appearance." Ms. Bacon allegedly was required to attend approximately eight meetings with

Schofield and he allegedly "would regularly ridicule women for their appearance, eating habits, and fitness," including frequently referring to women he perceived to be overweight as "inflamed." Schofield is alleged to have "grabbed [Ms. Bacon's] shoulders and commanded her to roll her shoulders back." It also is alleged that Dreiling made comments "in the office also openly and out loud alleged that patients had asked if Ms. Kelton was pregnant or stated that patients had stated that Ms. Kelton 'looks pregnant' based on her body type and size" and it is alleged that "On at least one occasion, Dr. Dreiling embarrassed Ms. Anderson for eating a Pop Tart instead [of] eating the food that Dr. Dreiling had provided." Dreiling is alleged to have kept a "horse-riding crop or 'whip' in his office . . . on display, which is also commonly used as a sex toy. Dr. Dreiling has used it to hit female employees including Miranda DeVault, Evelyn Venegas, Sarah McGee, Lacie Bacon and Suzanne Kelton. When Dr. Schofield visited for a meeting, he referred to Dr. Dreiling's riding crop as 'kinky'." "During team meetings, Dr. Dreiling would often bring out the riding crop, smack it into one hand, slap it on his own upper thigh, ask, 'who needs it?' and slap female employees on the knee or upper thigh, to try to apparently encourage employees to work harder or 'motivate' them."

16.    Additionally, it is alleged that "At one point, Dr. Dreiling smacked Ms. Kelton on the buttocks with the crop as she was in a vulnerable position, laying on her chest during a chiropractic adjustment. This was extremely startling and demeaning for Ms. Kelton who did not expect to be whipped while receiving medical treatment from her boss."

17.    It also is alleged that male coworker Steven Duvall would "frequently initiate unwanted and unsolicited physical contact [and] massage female employees in the workplace." That male employee also is alleged to have yelled at Employees and forced Ms. Anderson to hug him. The Complaint also alleges that the men at the office often made sexual jokes and that male patients also would make sexual comments, advances and touch the Employees. Dreiling allegedly joined in with the client's behavior as well as initiating allegedly inappropriate conversations in front of clients. Schofield also allegedly would ask the Employees sexual

questions and tell sexual stories to the Employees and Dreiling allegedly carried on the jokes after Schofield left.

18.    Dreiling also is alleged to have forced the Employees into closed door meetings that made them feel uncomfortable and to have assigned demeaning tasks to them. Further, Dreiling is alleged to have made jokes about one of the Employees being a survivor of sexual assault – the comments were said to be "extremely offensive and hurtful." Further, Dreiling allegedly shared a hotel room with a female employee, Tammy White, while Dreiling, White and plaintiff Kelton were on a work trip together. Finally, Dreiling is alleged to have sent sexualized memes to the Employees, made sexualized gestures to the Employees and to have called them gender-based epithets and names.

19.    Allegedly, Dreiling failed to take it seriously when patients would mistreat the Employees. "If employees complained, Dr. Dreiling would downplay the seriousness of the patient's behavior, and essentially blame Plaintiffs for being 'too sensitive' and act as though it was the employees' fault. Dr. Dreiling would make it clear that they could 'tell them to stop' but it was important that they did not lose a paying customer." An example of the workplace behavior alleged is that "On or around December 18, 2023, Ms. DeVault sent an email to Dr. Dreiling, requesting to take PTO hours, and asking him to update her name change. Dr. Dreiling once again insisted on a one-to-one meeting, which made Ms. DeVault uncomfortable. Ms. DeVault requested for Evelyn Venegas to be present as she was the newly appointed HR representative. When Ms. DeVault showed up, Dr. Dreiling approached Ms. DeVault, in front of Ms. Anderson, and insisted that Evelyn Venegas, the sole HR representative, would not be present for their meeting." The Employees are alleged to have quit "due to the ongoing severe and pervasive harassment based on sex. Ms. Kelton felt that the years of abuse were taking a toll on her physically, mentally, and emotionally."

20.    Further, it is alleged that "[Atlasrhino] posted a picture on its social media that had blurred and removed Ms. DeVault's likeness but used the outline of her body to advertise for

an open position." The Complaint alleges that "[a]s of today's date, [Atlasrhino] and Dr. Dreiling continue to use Ms. DeVault's and Ms. Kelton's likeness on websites to promote the company despite their employment ending for the company."

21.    The Complaint's First Cause of Action is for Sex Discrimination/Sexual Harassment "under RCW 49.60, *et. seq.* including but not limited to RCW 49.60.180 for discriminating against Plaintiffs on the basis of sex or gender."

22.    The Complaint alleges that "As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered lost wages, past and future, and garden variety emotional distress and humiliation in amounts to be proven at trial."

23.    The Complaint's Second Cause of Action is for Negligent Infliction of Emotional Distress which alleges that Atlasrhino and Dreiling had a "duty of care to Plaintiffs, their employees." Atlasrhino and Dreiling allegedly "breached this duty of care by engaging in a long-term series of unreasonable and outrageous acts to Plaintiffs that posed risks to their safety and wellbeing, which was outweighed by the utility." It is alleged that the "emotional distress suffered by Plaintiffs caused by [Atlasrhino] and Dreiling can be demonstrated by 'objective symptomatology' susceptible to medical diagnosis and proved through medical evidence."

24.    The Complaint seeks "all general and special damages both past and future, in amounts to be determined at trial because of the aforementioned negligent and intentional conduct of Defendants."

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT – DUTY TO DEFEND)

25.    COUNTRY incorporates by reference all allegations set forth above and all allegations of the Complaint in the Underlying Lawsuit.

26.    An actual controversy exists between COUNTRY and Atlasrhino and Dreiling regarding whether COUNTRY has a duty to defend Atlasrhino and Dreiling in the Employees'

Lawsuit under the Policies. Namely, COUNTRY does not believe that it owes a duty to defend Atlasrhino or Dreiling in the Underlying Lawsuit, but Atlasrhino and Dreiling apparently believe they each are owed a defense from COUNTRY.

27.    COUNTRY does not owe a defense to Atlasrhino under the Home Policy or the Personal Umbrella Policy issued through COUNTRY because Atlasrhino is not an insured on either of these policies and Atlasrhino apparently did not tender the Lawsuit under either of those policies.

28.    No defense is owed to Atlasrhino under the Businessowners Policy. The Businessowners Policy's Business Liability Coverage provides coverage only for damages for "bodily injury" or "property damage" if caused by an "occurrence." Because the Complaint does not allege "bodily injury" or "property damage" caused by an "occurrence," there is no duty to defend or other coverage. Further, Dreiling is alleged to be "the owner and operator" of Atlasrhino and thus to the extent that his intent is imputed to Atlasrhino and he intentionally caused the alleged harms, there is no "occurrence."

29.    Further, the Businessowners Policy's Business Liability Coverage provides coverage for "personal and advertising injury." There is no "personal and advertising injury" alleged in the Complaint and thus there could be no duty to defend or other coverage for "personal and advertising injury."  Additionally, to the extent that any "bodily injury" or "property damage" was known by Atlasrhino or an "employee" authorized by Atlasrhino to give or receive notice of an "occurrence" or claim prior to any annual policy period, there can be no coverage during that policy period.

30.    The Business Liability Coverage contains the following exclusions that are relevant to the issue of coverage regarding the Employees' Complaint:

**a. Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

To the extent that the Employees' Complaint alleges claims for "bodily injury" that was expected or intended from the standpoint of Atlasrhino, the Businessowners Policy provides no duty to defend or other coverage. This includes any intent imputed to Atlasrhino through its owner and operator, Dreiling.

### d. Workers' Compensation And Similar Laws

> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

To the extent that any of the damages sought by the Employees against Atlasrhino are because of any alleged obligation Atlasrhino may have for the Employees' alleged injuries because of any obligation of Atlasrhino under a workers' compensation, disability benefits, unemployment compensation or similar law, Exclusion d. applies and precludes a duty to defend and other coverage.

### e. Employer's Liability

> "Bodily injury" to:
>
> **(1)** An "employee" of the insured arising out of and in the course of:
>
>> **(a)** Employment by the insured; or
>>
>> **(b)** Performing duties related to the conduct of the insured's business; or
>
> **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an "insured contract".

To the extent that the Employees are "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51) (due to Endorsement BP 01 06 03 15 below) and to the extent that the Employees' Complaint alleges "bodily injury" to an "employee" of Atlasrhino arising out of and in the course of employment by Atlasrhino, or performing duties related to the conduct of Atlasrhino's business, there is no duty to defend or other coverage whether Atlasrhino may be liable as an employer or in any other capacity and the exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

The Business Liability Coverage's Employer's Liability Exclusion, Exclusion B.1.e. is amended by endorsement BP 01 06 03 15 which states:

> **f.** Paragraph **B.1.e. Employer's Liability** Exclusion applies only to "bodily injury" to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).
>
> With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **B.1.e. Employer's Liability** is replaced by the following:
>
> **(1) Employer's Liability**
>
> > **(a)** "Bodily injury" to an "employee" of the insured arising out of and in the course of:
> >
> > > • Employment by the insured; or
> > >
> > > • Performing duties related to the conduct of the insured's business.
> >
> > **(b)** Any obligation to share damages with or repay someone else who must pay damages because of the injury.
> >
> > This exclusion does not apply to liability assumed by the insured under an "insured contract".

To the extent that the alleged "bodily injury" is to "employees" of Atlasrhino whose employment is subject to the Industrial Insurance Act of Washington, and to the extent that the

Employees seek damages against Atlasrhino for potential liability because of "bodily injury" arising out of and in the course of employment by Atlasrhino or the performing duties related to the conduct of Atlasrhino's business, there is no duty to defend or other coverage. There is no coverage for any obligation to share damages with or repay someone else who must pay damages because of the injury.

### I.    p.  Personal And Advertising Injury

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

To the extent that there was any "personal and advertising injury" alleged, and to the extent that it was caused by or at the direction of Atlasrhino (including Dreiling to the extent that his acts/intent are imputed to Atlasrhino) with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury," there is no duty to defend or other coverage.

### r.  Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

To the extent that the Employees' Complaint alleges "personal and advertising injury" arising out of a criminal act committed by or at the direction of Atlasrhino (including Dreiling to the extent that his acts are imputed to Atlasrhino), there is no duty to defend or other coverage.

Atlasrhino, Inc. dba Zenaptic Chiropractic is the named insured on the Businessowners Policy and is, therefore, an insured. Dreiling is not a named insured on the Policy, so in order to be an insured, he must qualify under the Who Is An Insured section, which states that because Atlasrhino is an "organization other than a partnership, joint venture or limited liability

Page 11 – COMPLAINT FOR DECLARATORY RELIEF

company" Atlasrhino is an insured and its "'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. [Atlasrhino's] stockholders are also insureds, but only with respect to their liability as stockholders." Dreiling is alleged to be the "owner manager, and operator" in the Complaint and, according to the Washington Secretary of State's business records, Dreiling is Atlasrhino's governor and President. Additionally, Dreiling's alleged improper actions are alleged to have been done at his business in his management role. Thus, Dreiling is an insured for any duties as Atlasrhino's officer or director. This would include, at least, Dreiling's actions in receiving complaints from the Employees and giving direction to the staff. Neither Schofield nor Mo Chih Chu Chiropractic Training, Inc. falls within these insured categories, thus they would not qualify as insureds under the Businessowners Policy. The Businessowners Policy also includes an endorsement titled **Washington Employment- Related Practices Exclusion**, which states:

> The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**
>
> This insurance does not apply to "bodily injury" or "personal and advertising injury" to:
>
> (1) A person arising out of any:
>
> > **(a)** Refusal to employ that person;
> >
> > **(b)** Termination of that person's employment; or
> >
> > **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or
>
> **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed. This exclusion applies:

**(i)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(ii)** Whether the insured may be liable as an employer or in any other capacity; and

**(iii)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs **(1)(a)** and **(2)** of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

To the extent that the Employees allege "bodily injury" or "personal and advertising injury" arising out of any termination of their employment or any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person, there is no coverage and no duty to defend or other coverage.

The Businessowners Policy also includes an endorsement titled **Washington Employment- Related Practices Exclusion**, which states:

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

Page 13 – COMPLAINT FOR DECLARATORY RELIEF

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b) or (c) above is directed.**

 This exclusion applies:

 (i) Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

 (ii) Whether the insured may be liable as an employer or in any other capacity; and

 (iii) To any obligation to share damages with or repay someone else who  must pay damages because of the injury.

However, Paragraphs **(1)(a)** and **(2)** of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

To the extent that the Employees allege "bodily injury" or "personal and advertising injury" arising out of any termination of their employment or any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person, there is no duty to defend or other coverage. This exclusion applies whether the liability sought against Atlasrhino is liability as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury. Because the entirety of the Complaint relates to alleged employment-related practices such as harassment, humiliation or discrimination, there is no duty to defend or other coverage.

The Home Policy provides coverage only for damages because of "bodily injury" or "property damage" caused by an "occurrence." There is no "property damage" alleged in the Complaint. To the extent that the Employees' Complaint does not allege "bodily injury" or "property damage" caused by an "occurrence," there is no duty to defend or other coverage under the Home Policy.

Page 14 – COMPLAINT FOR DECLARATORY RELIEF

Dreiling is alleged to have intentionally acted or omitted to act and to the extent he is alleged to have intentionally caused the alleged harms, thus, there is no "occurrence."

The Home Policy's Coverage A contains the following exclusions that are relevant to Dreiling's coverage regarding the Employees' Complaint:

## II.    Exclusions – SECTION 1

**E.  Liability, Coverage A** and **Medical Payments, Coverage B** do not apply to the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" that may reasonably be expected or intended to result from the intentional acts of an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real property or personal property, than initially expected or intended.

This exclusion applies regardless of whether any "insured" personally participated in or committed the alleged act and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made.

However, this exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

The Home Policy precludes coverage for "bodily injury" or "property damage" that may reasonably be expected or intended to result from the intentional acts of Dreiling, even if the resulting "bodily injury" is of a different kind, quality or degree than initially expected or intended, or is sustained by a different person, entity, real property or personal property, than initially expected or intended, therefore there is no duty to defend or other coveragge. The Exclusion applies regardless of whether Dreiling personally participated in or committed the alleged act and

regardless of whether Dreiling subjectively intended the "bodily injury" for which a claim is made. All of the acts for which the Employees seek liability against Dreiling allegedly were intentionally committed by Dreiling and all of the alleged injuries reasonably may have been expected or intended to result from Dreiling's acts. Therefore, coverage is precluded and there is no duty to defend or other coverage. Even if there was "bodily injury" that was of a different kind, quality or degree than initially expected or intended, or that was sustained by a different person, entity, real property or personal property, than initially expected or intended, the Exclusion applies and coverage is precluded under the Home Policy, and there is no duty to defend or other coverage.

### 2. Business

(a) "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business". . . .

The allegations in the Complaint all relate to Dreiling's actions as the owner and operator of Atlasrhino as well as his actions as an Atlasrhino's manager of employees at Atlasrhino. The Exclusion precludes any duty to defend or other coverge for "bodily injury" arising out of or in connection with a "business" engaged in by Dreiling, whether or not Dreiling owns or operates or is employed by the "business." The Exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business". Therefore, the duty to defend and other coverage is precluded under the Home Policy.

### III. 7. Sexual Misconduct, Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse. This

exclusion applies regardless of whether any "insured" personally participated in or committed the alleged act and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made.

Sexual misconduct or sexual molestation means any activity, whether or not prosecuted, which is sexual in nature, whether permitted or unpermitted, including, but not limited to: sexual assault; sexual abuse; sexual battery; sexual relations; sexual acts; sexual activity; sexual handling; sexual massage; sexual exploitation; sexual exhibition; photographic, video, or other reproduction of sexual activity; fondling, intimacy, indecent exposure, or undue familiarity; or lewd or lascivious behavior;

The Home Policy precludes the duty to defend for "bodily injury" or "property damage" arising out of sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse, regardless of whether Dreiling personally participated in or committed the alleged act and regardless of whether Dreiling subjectively intended the "bodily injury" or "property damage" for which a claim is made. To the extent the allegations allege "bodily injury" because of corporal punishment due to Dreiling's alleged whipping of the Employees and to the extent that the Complaint alleges "bodily injury" arising out of sexual misconduct, sexual molestation or physical or mental abuse of the Employees, there is no duty to defend or other coverage under the Home Policy.

### 9. Criminal Acts

"Bodily injury" or "property damage" arising from any criminal act. Criminal act means any act or omission which is criminal in nature or for which a penal statute or ordinance permits or requires any term of imprisonment or sentence of public service duties. This exclusion applies regardless of whether any "insured" is actually charged with or convicted

of a crime and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made;

The Home Policy does not provide coverage for "bodily injury" or "property damage" arising from any criminal act, regardless of whether Dreiling is actually charged with or convicted of a crime and regardless of whether Dreiling subjectively intended any "bodily injury" alleged, and therefore there is no duty to defend or other coverage. To the extent that the alleged whipping of the Employees or any other acts are criminal acts, there is no duty to defend or other coverage under the Home Policy for any alleged "bodily injury."

    **F. Liability, Coverage A** does not apply to the following:

<div align="center">***</div>

    **4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

      **(a)** Workers' compensation law;

      **(b)** Non-occupational disability law; or

      **(c)** Occupational disease law;

The Home Policy does not cover liability for "bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by Dreiling under any Workers' compensation law; non-occupational disability law; or Occupational disease law. To the extent liability is sought for "bodily injury" and any  Employee is eligible to receive any benefits voluntarily provided or required to be provided by Dreiling under any Workers' compensation law; non-occupational disability law; or Occupational disease law, there is no duty to defend or other coverage under the Home Policy.

The Umbrella Policy's Coverage provides a defense when "underlying insurance" is defending only once that insurance is exhausted for an "occurrence" and then only if no other excess insurance applies. The relevant "underlying insurance" is the Home Policy and to the

extent it does not apply for the reasons stated above, this portion of the Umbrella Policy also does not apply. However, because the Home Policy is defending under a full reservation of rights, the Umbrella Policy cannot be triggered at this time.

For an "occurrence" not covered by "underlying insurance", but covered by the Umbrella Policy, a defense is owed only for claims or "suits" seeking damages for "bodily injury," "personal injury" or "property damage." The Employees' Complaint does not allege "personal injury" or "property damage." Further, to the extent the Employees' Complaint does not allege an "occurrence," there is no duty to defend or other coverage under the Umbrella Form for "bodily injury," "personal injury" or "property damage."

The Umbrella Policy contains the following exclusions that are relevant to Dreiling's potential coverage regarding the Employees' Complaint:

**SECTION II – Exclusions**

This policy does not apply to:

A. An obligation for which an **insured** or their insurers may be held liable under workers' compensation, disability benefits, or similar law;

The Umbrella Policy provides no coverage for an obligation for which Dreiling or his insurers may be held liable under workers' compensation, disability benefits, or similar law. To the extent Dreiling or his insurers may be held liable under workers' compensation, disability benefits, or similar law, there is no duty to defend or other coverage under the Umbrella Policy.

**B. Bodily injury** or **property damage** expected or intended by an **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property;

The Umbrella Policy provides no duty to defend for "bodily injury" or "property damage" expected or intended by Dreiling unless the "bodily injury" resulted from the use of reasonable force to protect persons or property. To the extent any "bodily injury" or "property damage" is

alleged and it was expected or intended by Dreiling, there is no duty to defend or other coverage under the Umbrella Policy.

      C. [amended by endorsement 20153WA (01-04/11)] **Personal injury** arising out of oral, written or electronic publication of material, if done by or at the direction of an **insured** with knowledge of its falseness;

The Umbrella Policy provides no duty to defend for "personal injury" arising out of oral or written publication of material, if done by or at the direction of Dreiling with knowledge of its falseness. To the extent any "personal injury" is alleged and was arising out of oral or written publication of material, done by Dreiling or at his direction, with knowledge of its falseness, there is no duty to defend or other coverage under the Umbrella Policy.

      **D. Bodily injury, personal injury** or **property damage** arising from a **criminal act** of an **insured**;

The Umbrella Policy provides no duty do defend for "bodily injury", "personal injury" or "property damage" arising from a "criminal act" of Dreiling. To the extent any "bodily injury", "personal injury" or "property damage" is alleged due to "criminal acts", such as assault, there is no duty to defend or other coverage under the Umbrella Policy.

      E. **Bodily injury**, **personal injury** or **property damage** arising out of a:

        1. **Business** pursuit of an **insured**; or

        2. **Business property** owned by, rented to, or controlled by an **insured**, except **bodily injury**, **personal injury** or **property damage** to which **underlying insurance** applies;

The Umbrella Policy provides no duty to defend for "bodily injury," "personal injury" or "property damage" arising out of Dreiling's "business" pursuits. All of the allegations relate to Dreiling's "business" pursuits as the owner, manager, and operator of Atlasrhino and therefore, the Umbrella Policy provides no duty to defend or other coverage.

Page 20 – COMPLAINT FOR DECLARATORY RELIEF

F. Bodily injury, personal injury or property damage arising out of your act or failure to act as a director, officer, trustee, or member of a corporation or group. This exclusion does not apply when the corporation or group:

**1.** Is not-for-profit; and

**2.** Does not involve your business.

This exclusion F. does not apply to damages to which underlying insurance applies;

The Umbrella Policy provides no duty defend for "bodily injury," "personal injury" or "property damage" arising out of Dreiling's acts or failures to act as a director, officer, trustee or member of Atlasrhino. To the extent that Employees' Complaint alleges that Dreiling failed to act or improperly acted when he received complaints from the Employees or otherwise as an officer of Atlasrhino, there is no duty to defend or other coverage under the Umbrella Policy.

M. **Bodily injury**, **personal injury** or **property damage** arising out of sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse. This exclusion applies regardless of:

1. Whether any **insured** personally participated in or committed the alleged act; and

2. Whether any **insured** subjectively intended the bodily injury or property damage;

The Umbrella Policy provides no duty to defend for "bodily injury," "personal injury" or "property damage" arising out of sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse, regardless of whether Dreiling personally participated in or committed the alleged act; and regardless of whether Dreiling subjectively intended the "bodily injury" or "property damage". To the extent the allegations allege "bodily injury" because of corporal punishment due to Dreiling's alleged whipping of the Employees and to the extent that the Complaint alleges "bodily injury" or "personal injury" arising out of sexual misconduct, sexual

molestation or physical or mental abuse of the Employees, there is no duty to defend or other coverage under the Umbrella Policy.

The Umbrella Policy contains endorsement 20155 (01-09/10) titled EMPLOYER'S LIABILITY EXCLUSION:

> The following is added:
>
> This policy does not apply to liability for **bodily injury**, **personal injury**, mental anguish or mental injury to your employees, arising out of and in the course of their employment.
>
> Nothing contained here varies, alters, or extends any provision of this policy except as provided in this endorsement.

The Umbrella Policy provides no duty to defend for liability for "bodily injury", "personal injury", mental anguish or mental injury to Dreiling's employees, arising out of and in the course of their employment. To the extent that the Employees' Complaint alleges liability for "bodily injury", "personal injury", mental anguish or mental injury to Dreiling's employees, arising out of and in the course of their employment, there is no duty to defend or other coverage under the Umbrella Policy.

31.     COUNTRY reserves the right to amend this complaint to cite other reasons that no duty to defend or other coverage exists regarding Atlasrhino or Dreiling and, as mentioned, all of the allegations of the Underlying Lawsuit and the terms and conditions of the Policies are included in this complaint as if stated in full.

32.     Pursuant to 28 U.S.C. § 2201, COUNTRY is entitled to a declaration by this Court of its rights and duties related to the defense of Atlasrhino and Dreiling in the Underlying Lawsuits under the Policies.

///

///

**SECOND CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT – DUTY TO INDEMNIFY)**

33.     COUNTRY incorporates by reference all allegations set forth above.

34.     An actual controversy exists between COUNTRY and Atlasrhino and Dreiling regarding whether COUNTRY has a duty to indemnify Atlasrhino and Dreiling in the Underlying Lawsuit under the Policies. Namely, COUNTRY does not believe it owes a duty to indemnify Atlasrhino and/or Dreiling, but Atlasrhino and Dreiling apparently believe indemnity is owed to each of them from COUNTRY.

35.     Pursuant to 28 U.S.C. § 2201, COUNTRY is entitled to a declaration by this Court of its rights and duties related to the indemnity of Atlasrhino and Dreiling in the Underlying Lawsuit under the Policies.

36.     To prevent Atlasrhino and Dreiling from having to litigate facts that may be in dispute in the Underlying Lawsuit, COUNTRY will refrain in this declaratory judgment action from litigating, regarding the duty to indemnify, factual issues except undisputed extrinsic evidence that the Court may consider resolving whether a duty to defend or other coverage exists until the Underlying Lawsuit is resolved. COUNTRY will also seek a declaration from the Court regarding only the legal interpretation of the policies' insuring agreements  and the relevant exclusions, until the Underlying Lawsuit is resolved. COUNTRY reserves the right to amend this declaratory judgment complaint should any other factual issue be decided or resolved in the Underlying Lawsuit.

**REQUEST FOR RELIEF**

WHEREFORE, COUNTRY prays for judgment as follows:

1.     For a declaration that COUNTRY does not owe Atlasrhino and Dreiling a defense in the Underlying Lawsuit under the Policies;

2.     For a declaration that COUNTRY does not owe Atlasrhino and Dreiling indemnity

in the Underlying Lawsuit under the Policies;

      3.    For a declaration that COUNTRY may immediately withdraw from the defense of the defendants in the Underlying Lawsuit;

      4.    For such other relief that the Court deems just and proper.

DATED this 4th day of October, 2024.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By  /s/*David P. Rosssmiller*

**David P. Rossmiller, WSBA No. 36491**
Email: david.rossmiller@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
701 NE 136th Avenue, Suite 200
Vancouver, WA 98684
Telephone:(360) 612-0515
Facsimile: (360) 612-0516

*Attorney for COUNTRY Mutual Insurance*

Page 24 – COMPLAINT FOR DECLARATORY RELIEF